**William Martin KINDLE and Murline Kindle, Plaintiffs-Appellees,**

v.

**CUDD PRESSURE CONTROL, INC., and National Union Fire Insurance Company of Pittsburgh, Pa., Inc., Defendants-Appellants.**

No. 85–4398.

United States Court of Appeals, Fifth Circuit.

June 20, 1986.

508

H. Alston Johnson, III, Baton Rouge, La., and Kim Hanson LaVigne, Mayer, Smith & Roberts, Shreveport, La., for defendants-appellants.

James R. Dawson, Miller, Dawson & Askew, Shreveport, La., for plaintiffs-appellees.

Before POLITZ, HIGGINBOTHAM, and JONES, Circuit Judges.

POLITZ, Circuit Judge:

In this diversity case, we must determine the scope and effect of Acts 1980, No. 509, amending La.R.S. 23:1231,[1] a section of the Louisiana Worker's Compensation Law establishing compensation payments for work-related deaths. This is a case of first impression. Considering the express language of the amending Act, in light of the jurisprudential development of the Louisiana worker's compensation regime, and considering precedent of the Supreme Court and of this court, we conclude that the district court correctly applied Louisiana law, *Kindle v. Cudd Pressure Control, Inc.,* 608 F.Supp. 544 (W.D.La.1985), and affirm its decision.

## Facts

This case was tried to the court on comprehensive, stipulated facts. We summarize the relevant portions.

William Martin Kindle and Murline Kindle are the surviving parents of William T. Kindle, who was killed in an oil-rig accident during the course and scope of his employment by Cudd Pressure Control, Inc., an oilfield service company. At the time of his death William T. Kindle was 25 years old. He had married Paulette McKenzie Kindle in December 1980 in Wood County, Texas and they lived together at Van, Texas in a mobile home owned by Paulette Kindle until October of 1982 when he abandoned the matrimonial domicile. There was no reconciliation, and after their separation William T. Kindle provided Paulette Kindle with no monetary or material support whatever. The two were never divorced or legally separated.

William T. Kindle had no children. At the time of his death no one was dependent on him for financial support. Although he used his parents' home in Van, Texas as his permanent address, he did not live with them or contribute towards their support.

In November 1982, William T. Kindle was employed by the Longview, Texas office of Cudd Pressure. At that time he resided in an apartment in Longview. On March 1, 1983, Kindle was dispatched to work on a rig in Jackson Parish, Louisiana. He and his fellow workers were lodged in a motel in a nearby city. On March 3, 1983 he was killed in a well blowout.

The Texas Industrial Accident Board considered the workers' compensation claims of the parents and surviving spouse and determined that Paulette Kindle was the proper person to receive death benefits under the Texas Workers' Compensation Act.[2]

---

1. Acts 1980, No. 509, added the second paragraph to La.R.S. § 23:1231, which, as amended, provides:

    For injury causing death within two years after the accident, there shall be paid to the legal dependent of the employee, actually and wholly dependent upon his earnings for support at the time of the accident and death, a weekly sum as hereinafter provided. If the employee leaves legal dependents only partially actually dependent upon his earnings for support at the time of the accident and death, the weekly compensation to be paid shall be equal to the same proportion of the weekly payments for the benefit of persons wholly dependent as the amount contributed by the employee to such partial dependents in the year prior to his death bears to the earnings of the deceased at the time of the accident.

    However, if the employee leaves no legal dependents, the sum of twenty thousand dollars shall be paid to each surviving parent of the deceased employee, in a lump sum, which shall constitute the sole and exclusive compensation in such cases.

2. Tex.Rev.Civ.Stat.Ann. art. 8306 § 8a (Vernon Supp.1986) provides:

    The compensation provided for in the foregoing section of this law shall be for the sole and exclusive benefit of the surviving husband who has not, for good cause and for a period of three years prior thereto, abandoned his wife at the time of the injury, and of the wife who has not, at the time of the injury without good cause and for a period of three years prior thereto, abandoned her husband, and of the minor children, parents and stepmother, without regard to the question of dependency, dependent grandparents, dependent children, dependent grandchildren and dependent brothers and sisters of the deceased employee; and the amount recovered thereunder shall not be liable for the debts of the deceased nor the debts of the beneficiary or beneficiaries and shall be distributed among the beneficiaries as may be entitled to the same as hereinbefore provided, according to the laws of descent and distribution of this State; provided, the right in such beneficiary or beneficiaries to recover compensation for

National Union Fire Insurance Company, Cudd's compensation carrier, sought judicial review.[3] The Texas state district court upheld the Board's decision.

Invoking diversity jurisdiction, William M. and Murline Kindle brought the present action against Cudd and National Union, seeking the $20,000 lump-sum benefit conditionally granted to each parent by the 1980 amendment to La.R.S. 23:1231. The Kindles claimed entitlement to this payment because their son was survived by no "legal dependents." The district court agreed. Cudd and National Union timely appealed, contending that the trial court erred by giving an unduly restricted interpretation to the term "legal dependents" and by failing to give proper consideration to the Texas proceedings.

*Analysis*

■ In this diversity case we are Erie-bound to apply Louisiana law as we find or fathom it. It is clear that the Louisiana courts would exercise subject-matter juris-

diction and apply Louisiana law to claims for worker's compensation benefits when the death or injury occurs in Louisiana, no matter where the parties were domiciled, and regardless of the place of the employment contract. *Banks v. Carl Ott Poles and Piling, Inc.*, 440 So.2d 803 (La.App. 1983), *writ denied*, 444 So.2d 1244 (La. 1984); *see generally*, Malone & Johnson, 14 *Louisiana Civil Law Treatise: Workers' Compensation Law and Practice II*, § 404, pp. 313–15 (2d ed. 1980). Although briefed and argued at both the trial and appellate levels, this case does not turn on the choice of law between Texas and Louisiana. Louisiana law determines and controls the resolution of this litigation.

Two issues are posited. Are the Kindles entitled to the lump-sum payment under La.R.S. 23:1231 as parents of an employee not survived by any legal dependents? If that query is answered in the affirmative, would that payment be in derogation of the full faith and credit clause of the United States Constitution?[4]

death be determined by the facts that exist at the date of the death of the deceased and that said right be a complete, absolute and vested one. Any parent who, during a substantial period of the minority of the deceased worker, shall have abandoned the worker shall be deemed to have waived any entitlement to benefits, and such parent's benefits shall be paid as if the parent had predeceased the deceased worker. The burden of proof shall be upon any beneficiary seeking to disqualify the parent on the grounds of abandonment or failure to support. Such compensation shall not pass to the estate of the deceased to be administered upon, but shall be paid directly to said beneficiaries when the same are capable of taking, under the laws of this State, or to their guardian in case of mental disability, infancy or other disqualifying cause; except payments may be made directly to the person having custody of the person of such beneficiary, who shall be entitled to receive and receipt for such payments unless or until the association is notified that a guardian has been appointed, in which event payment shall thereafter be made to such guardian. The compensation provided for in this law shall be paid weekly to the beneficiaries herein specified, subject to the provisions of this law.

**3.** Tex.Rev.Civ.Stat.Ann. arts. 8307 § 5 and 8306 § 19 (Vernon Supp.1986).

**4.** Article IV, § 1 of the United States Constitution provides:

Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be provided, and the Effect thereof.

28 U.S.C. § 1738, the congressional response to this Article, directs:

The Acts of legislature of any State, Territory, or Possession of the United States, or copies thereof, shall be authenticated by affixing the seal of such State, Territory or Possession thereto.

The records and judicial proceedings of any court of any such State, Territory or Possession, or copies thereof, shall be proved or admitted in other courts within the United States and its Territories and Possessions by the attestation of the clerk and seal of the court annexed, if a seal exists, together with a certificate of a judge of the court that the said attestation is in proper form.

Such Acts, records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken.

*Legal Dependents*

█ The claim of the Kindles turns on the meaning assigned to the term "legal dependents" in Acts 1980, No. 509. Does that term envision a legal dependent determined exclusively under the Louisiana worker's compensation statute, or does it contemplate a legal dependent under the compensation statute of any of the other 49 states whose workers' compensation legislation might be applicable to a given work-related death? We conclude that this decision must be made considering only the Louisiana compensation statute. Otherwise the sure, certain, and quick payment, the hallmark of all compensation schemes, would become unsure, uncertain, and anything but quick as the forum state examined into not only what occurred but what might have occurred under the law of all other concerned jurisdictions. Having made this threshold determination, we review the design of Louisiana's worker's compensation death-benefits provisions.

Under La.R.S. 23:1251 children and a surviving spouse living with the decedent are conclusively presumed to be dependents.[5] No proof of dependency is required and no challenge to that dependency is allowed. Anyone else claiming dependency upon the deceased employee must prove the extent and degree of support provided by the decedent.[6] The first category is legally presumed to be dependent. The second, broader category is entirely fact-bound.

Louisiana's first compensation statute, Acts 1914, No. 20, § 8(1)(e), provided for payments to "legal dependents" of the deceased employee, and included both those wholly dependent and those "only partly dependent" on the decedent. Two years later the language was changed and death benefits were made payable to the surviving spouse and children, and then alternatively to the parents, "if dependent," and siblings, "if actually dependent." Acts 1916, No. 243, § 1(f)(11). In 1926, the Louisiana Legislature returned to its original language and established death benefits for "legal dependents" whether "actually and wholly dependent" or "only partially actually dependent." Acts 1926, No. 85, § 8(2). Death benefits have continued to extend to "legal dependents" throughout the intervening 60 years.

There can be no doubt that the purpose of death benefits under the Louisiana worker's compensation scheme is "to provide compensation for dependents deprived of support through the work-caused death of a wage earner." *McDermott v. Funel,* 258 La. 657, 664, 247 So.2d 567, 569 (La. 1971) (Tate, J.). *See* Malone & Johnson, *supra,* § 302, p. 6 (death benefits are intended to replace "the loss of needed support which was formerly provided by the deceased worker"). As these scholars appropriately concluded "proof of dependency is essential to recovery." *Id.*

The term "legal dependents," in a worker's compensation death-benefits setting, has been defined by the Louisiana Supreme Court as "dependents who are legally entitled to compensation under the statute." *Thompson v. Vestal Lumber & Mfg. Co.,* 208 La. 83, 118, 22 So.2d 842, 853 (La.1945) (on rehearing). That necessarily includes any person who is conclusively presumed to be dependent under § 23:1251 and any per-

---

5. La.R.S. 23:1251 provides:

> The following persons shall be conclusively presumed to be wholly and actually dependent upon the deceased employee:
> (1) A surviving spouse upon a deceased spouse with whom he or she is living at the time of the accident or death.
> (2) A child under the age of eighteen years (or over eighteen years of age, if physically or mentally incapacitated from earning) upon the parent with whom he is living at the time of the injury of the parent, or until the age of twenty-three if enrolled and attending as a

full-time student in any accredited educational institution.

6. La.R.S. 23:1252 provides:

> In all other cases, the question of legal and actual dependency in whole or in part, shall be determined in accordance with the facts as they may be at the time of the accident and death; in such other cases if there are a sufficient number of persons wholly dependent to take up the maximum compensation, the death benefit shall be divided equally among them, and persons partially dependent, if any, shall receive no part thereof.

512

son who can prove actual dependency under § 23:1252. *Thompson; McDermott v. Funel*, 235 So.2d 207 (La.App.1970), *rev'd on other grounds*, 258 La. 657, 247 So.2d 567 (1971); *Fidelity & Casualty Co. of N.Y. v. Ivory*, 129 So.2d 894 (La.App.1961) (on rehearing). As relates to a surviving spouse, legal dependency is subject to a significant qualification, for La.R.S. § 23:1255 mandates:

> No compensation shall be payable under [the death-benefits] Part to a surviving spouse unless he or she was living with the deceased spouse at the time of the injury or death, or was then actually dependent upon the deceased spouse for support.

■ The stipulated facts, in civil litigation the highest form of proof, unequivocally establish that Paulette McKenzie Kindle was not living with the decedent at the time of his death, was receiving no support from him, and was in no way materially or financially dependent upon him. She does not meet either test of legal dependency and she would be foreclosed from receiving any death benefits under Louisiana's compensation statute. These facts are not disputed. No one qualifies under Louisiana law as a legal dependent of William T. Kindle. It necessarily follows that each of his parents is entitled to receive the $20,000 lump-sum payment provided by Acts 1980, No. 509, unless there is a compelling reason to the contrary.

In so concluding, we are cognizant that this payment is inconsistent with the death benefits traditionally paid under the Louisiana compensation format. No dependency, legally presumed or factually proven, is involved. Indeed the absence of such is a prerequisite to the payment. Acts 1980, No. 509, appears to engraft a modest tort-type wrongful-death payment onto the patina of the compensation act. But consistency is not the determinant; the express legislative will is. We are mindful of the first article of the Louisiana Civil Code which instructs: "Law is a solemn expression of legislative will." The legislative will is manifest in the amending act to R.S. 23:1231. If an employee is killed in a situation in which compensation death benefits would be payable to qualified survivors, but there is no qualifying survivor, *i.e.*, legal dependent, then as a matter of legislative determination and direction, a fixed sum is to be paid to each surviving parent, and that sum "shall constitute the sole and exclusive compensation in such cases."

Does this "exclusivity" language erect a tort shield? Is it a barrier against double liability or double recovery, or is it merely surplusage? We are persuaded it is merely surplusage. There need be no tort shield, for parents have no justiciable tort claim against the employer for the work-related death of a child. R.S. 23:1032; *Miller v. Lambert*, 380 So.2d 695 (La.App.1980); *Flynn v. Devore*, 373 So.2d 580 (La.App. 1979); *Branch v. Aetna Cas. & Sur. Co.*, 370 So.2d 1270 (La.App.), *writ denied*, 374 So.2d 660 (La.1979); *see also Atchison v. May*, 201 La. 1003, 10 So.2d 785 (1942).

Nor can the language be intended to prevent double liability. There can be no double liability, for the payment to the parents is only triggered if there is no legal dependent to whom payment may be made. Payment to a legal dependent, however small,[7] automatically forecloses the lump-sum payment to the parents. The same applies to double recovery. No one could twice recover. If the parents recover benefits after proving actual dependency, they could not claim the lump-sum payment for, in that instance, a payment would have been made to a legal dependent.

We suspect that the so-called mini-exclusivity clause included in the amendment to R.S. 23:1231 was prompted, in part, by the legislature's concern that a tort-type remedy was being engrafted on the compensa-

---

7. One could envision a situation where an employee was survived by a mentally and physically healthy, non-student child who was only weeks away from his 18th birthday when his father was killed. A few weeks of compensation would be paid and all compensation-benefit exposure would then cease. The lump-sum payments to the surviving parents would not be in order. *See also* Malone & Johnson, *supra*, § 307, p. 3 (Supp.1986).

tion statute. That would account for the verbiage announcing that no new right or remedy was being created, other than the one granting to the non-dependent parents of a deceased child a one-time payment from the employer if no other compensation payments were made under the Louisiana statute.

■ Cudd and National Union urge that we look beyond the parameters of the Louisiana statute and deny the lump-sum payment to the non-dependent parents if we find any person, in any jurisdiction, who has been or might be found to be a legal dependent of William T. Kindle. We decline to do that, absent explicit statutory language or other compelling circumstances that would indicate that the Louisiana Legislature was including recovery under the laws of the sister states when it amended R.S. 23:1231. We find neither. It is probable that little or no consideration was given to the matter. We have no reason to believe that the legislators entertained scenarios beyond the confines of the Louisiana statute. The challenge now made to the resulting uneven fit is a matter best addressed to the creators of this quasi-tort, quasi-compensation remedy to non-dependent parents for the death of a child. This forum is a distant second best.

*Full Faith and Credit*

■ Appellants maintain that the full faith and credit clause and 28 U.S.C. § 1738 require that we look beyond Louisiana law and give force and effect to the Texas administrative and judicial holdings and thus foreclose the claims of the Kindles. Possessing a surface appeal, their argument loses its persuasive effect upon close scrutiny.

Our analysis involves a review of *Thomas v. Washington Gas Light Co.,* 448 U.S. 261, 100 S.Ct. 2647, 65 L.Ed.2d 757 (1980); *Industrial Comm'n of Wisconsin v. McCartin,* 330 U.S. 622, 67 S.Ct. 886, 91 L.Ed. 1140 (1947); *Magnolia Petroleum Co. v. Hunt,* 320 U.S. 430, 64 S.Ct. 208, 88 L.Ed. 149 (1943); and *Landry v. Carlson Mooring Service,* 643 F.2d 1080, *reh'g en banc denied,* 647 F.2d 1121 (5th Cir.), *cert. denied,* 454 U.S. 1123, 102 S.Ct. 970, 71 L.Ed.2d 109 (1981).

In *Magnolia,* a Louisianian hired in Louisiana was injured on the job in Texas and recovered Texas compensation benefits. The employee then sought supplementary benefits in Louisiana. The Court held that Louisiana could not award supplementary benefits because the doctrines of res judicata and election of remedies applied to workers' compensation cases as they applied to other cases.

Four years later, the *McCartin* court severely limited the *Magnolia* holding and upheld a Wisconsin court's award of supplementary benefits after the employee had recovered under Illinois law. The employee had been informed by the Wisconsin Industrial Commission that he could first seek benefits under Illinois law and that any recovery thus made would be credited against his claim under Wisconsin law. The Supreme Court distinguished *Magnolia,* holding that

[o]nly some unmistakable language by a state legislature or judiciary would warrant our accepting ... a construction [that one state's workers' compensation statute is designed to preclude any recovery by proceedings brought in another state].

330 U.S. at 628, 67 S.Ct. at 889.

A unanimous *Thomas* court criticized *McCartin.* A plurality preferred to overrule *Magnolia,* opining that

a State has no legitimate interest within the context of our federal system in preventing another State from granting a supplemental compensation award when that second State would have had the power to apply its [workers'] compensation law in the first instance.

448 U.S. at 286, 100 S.Ct. at 2663. Three justices concurred in the result but were unwilling to overrule *Magnolia* or *McCartin* and opted to follow the *McCartin* test which they criticized. 448 U.S. at 289 (White, J., concurring). Justices Marshall and Rehnquist dissented, urging that *Mag-*

*nolia* be followed and *McCartin* overruled. 448 U.S. at 296, 100 S.Ct. at 2668 (Rehnquist, J., dissenting).

We have previously confronted the *Thomas* conundrum. In *Landry v. Carlson Mooring Service,* we viewed the Supreme Court's holding in *Thomas* to be " 'that position taken by those Members who concurred in the judgment on the narrowest grounds,' " 643 F.2d at 1085 (*quoting Gregg v. Georgia,* 428 U.S. 153, 169 n. 15, 96 S.Ct. 2909, 2923 n. 15, 49 L.Ed.2d 859 (1976)), and applied the *McCartin* test. Accordingly, in *Landry,* we held that "[a]bsent *unmistakable language,* in either the Texas Compensation Act or the cases construing it, declaring recovery under the Texas act a final adjudication of all claims possibly arising from the injury, *McCartin* requires a finding that a subsequent recovery under the workers' compensation act of another jurisdiction is proper." 643 F.2d at 1085 (emphasis in original).[8]

A careful parsing in *Landry* of the Texas act and Texas case law disclosed that neither contained the requisite "unmistakable language" and we allowed a claimant who had received benefits under Texas law to seek supplementary benefits under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901 *et seq.*

Although procedurally different, the instant case is conceptually similar to *Landry.* In *Landry* there was a Texas judicial determination that the claimant was entitled to benefits in Texas; here, there is a Texas judicial determination that the claimants were not entitled to benefits in Texas. The Kindles were not able to present their claim for Louisiana benefits in the Texas proceedings, since "Texas courts will not entertain jurisdiction to enforce rights arising under [the Louisiana Worker's Compensation Law]." *Consolidated Underwriters v. King,* 160 Tex. 18, 325 S.W.2d 127, 128, *cert. denied and app. dism'd,* 361 U.S. 198, 80 S.Ct. 295, 4 L.Ed.2d 238 (1959). *Landry* blazes our path. We find no "unmistakable

language" in the Louisiana compensation statute, or the cases interpreting it, that would require resort to the law of a sister state in this decision.

Finally, Cudd and National Union invite our attention to *Chicago, R.I. & P.R. Co. v. Schendel,* 270 U.S. 611, 46 S.Ct. 420, 70 L.Ed. 757 (1926), and suggest that it directs our decision. We do not agree. *Schendel* simply teaches that the full faith and credit clause requires that the forum state give the factual determination underlying a judgment the same res judicata effect that the rendering state would give. If this rubric were applicable in the instant case, it would avail appellants naught. Appellants argue that the Texas award to Paulette Kindle was based on a factual finding that she was dependent on the decedent. They would ignore the stipulation that she was not dependent on the decedent and the fact that the award to her under Tex.Rev.Civ. Stat.Ann. art. 8306 § 8a was not predicated on a finding of presumed or actual dependency. That statute grants death benefits to the surviving spouse provided there is no abandonment of the decedent more than three years prior to his death. And it awards these benefits "without regard to the question of dependency." *Id.* Under the Texas statute, recovery by the spouse is based on status, not dependency. *See, e.g., Commercial Standard Ins. Co. v. Marin,* 488 S.W.2d 861 (Tex.Civ.App.—San Antonio 1972, writ ref'd n.r.e.). Whereas allowing the spouse automatic recovery might be based on a presumption of dependency, it is not the only conceivable reason. Absent Texas authority requiring that we do so, we cannot ignore the clear language that spousal benefits are due "without regard to the question of dependency." *Schendel* gives appellants little succor.

For the foregoing reasons we conclude that William T. Kindle was not survived by any legal dependent within the intendment

---

8. Although these full faith and credit cases involve recovery in the first jurisdiction and subsequent attempts in other jurisdictions to recover additional benefits, the principles and policies underlying the full faith and credit clause and res judicata are the same where, as here, the claimants failed to recover in the first jurisdiction.

of the Louisiana worker's compensation statute, and the fact that his surviving spouse was awarded death benefits under the Texas compensation law does not affect the right of the decedent's parents to the lump-sum payment established by Acts 1980, No. 509.

The judgment of the district court is AFFIRMED.